# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ESTATE OF JEFFERY D. ASHLEY, by and through his guardian and best friends, JERRY and DAVID ASHLEY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**DEPUTY CASEY THROWER, *et al.*,**<br><br>**Defendants.** | Case No. 5:08-cv-00803-CLS |

## MEMORANDUM OPINION AND ORDER

This action is before the court on: (1) the "Motion to Dismiss, Motion to Strike, Motion for a More Definite Statement, or, in the alternative, Motion for Partial Summary Judgment" filed by defendants Blake Dorning and Casey Thrower;[1] (2) a motion to dismiss filed by defendant Roscoe Howell;[2] (3) a motion to dismiss filed by a defendant identified only as "Trooper Bauman"; and (4) the plaintiffs' motions to file proposed "first" and "second" amended complaints.[3] Each of these motions will be addressed in turn, but the ultimate result of analysis will be that the only proper plaintiff to maintain this action, Margaret Ashley, acting in a representative

---

[1] *See* doc. no. 11.

[2] *See* doc. no. 22.

[3] *See* doc. no. 16 (motion seeking leave to file a first amended complaint); doc. no. 17 (motion seeking leave to file a second amended complaint).

capacity as the personal representative for the Estate of Jeffrey D. Ashley, deceased, will be required to file a "third" amended complaint consistent with the directions contained in this memorandum opinion and order.

## I.  FACTS[4]

Jeffrey D. Ashley (hereinafter "decedent"), an individual who suffered from Down's Syndrome and congestive heart failure, died at the age of 42 on May 18, 2006.[5] This action seeks redress for alleged violations of the decedent's rights during his lifetime under the United States Constitution, the Alabama Constitution, and Alabama law.  The named plaintiffs, Jerry Ashley and David Ashley, seemingly blame the defendants identified as Deputy Casey Thrower and "Trooper Bauman" for decedent's death.

On the morning of his death, the decedent "began lapsing into shortness of breath" and suffered a heart attack.[6] Decedent's brother, Jerry Ashley, perceived the decedent's condition as a medical emergency and decided, after contacting his father, to drive the decedent and his care-giver from their home in Tennessee to a hospital in Huntsville, Alabama.[7]  While en route to Huntsville, Jerry Ashley telephoned

---

[4]For the purposes of this memorandum opinion and order, the court gleans the facts of this case exclusively from the original complaint (doc. no. 1), and from the motions and briefs filed by counsel for the parties.  All questions of fact have been resolved in plaintiff's favor, and no extraneous evidence has been considered by the court when ruling on the present motions.

[5]*See* doc. no. 1 (original complaint) at ¶¶ 5, 6.
[6]*Id.* at ¶ 6.
[7]*Id.* at ¶¶ 6, 7.

"911" for emergency assistance, and informed the dispatcher of the situation.[8] The dispatcher arranged to have an ambulance waiting for the Ashleys at a point which was roughly halfway between the decedent's home and Huntsville Hospital; more specifically, at "Moore's Mill Road."[9]  The purported purposes behind this arrangement were two: *i.e.*, travel by ambulance would "save time in getting to the hospital," and decedent presumably would receive swifter medical care.[10]

Shortly after these arrangements were made, Deputy Sheriff Casey Thrower drove his cruiser alongside the Ashley's automobile, and signaled Jerry Ashley to pull over. Ashley refused to comply.[11] Deputy Thrower gave chase, and after less than a mile, the Ashleys met a roadblock established by Alabama State Troopers.[12] Once Jerry Ashley stopped his vehicle at the roadblock, Deputy Thrower and Trooper Bauman forced him from the vehicle, arrested him, and placed him in a patrol car.[13] Jerry Ashley attempted to explain to the officers that the decedent was in cardiac arrest, needed immediate medical attention, and an ambulance was waiting a few miles away.[14] Defendants Thrower and Bauman did not, at any time, remove the

---

[8] *Id.* at ¶ 8.
[9] *Id.* at ¶¶ 8, 9.
[10] *Id.*
[11] *See* doc. no. 1 (original complaint) at ¶¶ 9, 10.
[12] *Id.* at ¶ 11.
[13] *Id.* at ¶ 12.
[14] *Id.* at ¶¶ 10, 12.

decedent from Jerry Ashley's automobile. Following Jerry Ashley's arrest, the deceased lost consciousness. Even so, the officers did not offer any assistance, and allegedly hindered the decedent's ability to seek medical care.[15] An ambulance reached the decedent approximately ten minutes following the arrest of his brother, at which time decedent was no longer breathing.[16] He was *officially* pronounced dead approximately one hour later at Huntsville Hospital.[17]

## II.  DISCUSSION

**A.   Federal Rule of Civil Procedure 17 Prohibits the Dismissal of this Lawsuit**

Neither of the named plaintiffs, Jerry Ashley or David Ashley, is the duly appointed personal representative of the decedent's estate, and defendants Dorning and Thrower argue that this action is due to be dismissed under Alabama law because it was not instituted by the proper party within the 2-year limitations period mandated by Alabama's wrongful death statute. *See* Ala. Code § 6-5-410 (1975) (2005 Replacement Vol.). The named plaintiffs did not respond, in any way, to this argument.[18]

---

[15] *Id.* at ¶ 12.

[16] *Id.* at ¶ 13.

[17] *See* doc. no. 1 (original complaint) at ¶ 16.

[18] Counsel for the named plaintiffs is encouraged to, in the future, respond to any and all arguments raised in an opposing party's motion. Failure to so respond will be construed as a waiver of any opposition, and the requested relief may be granted without further comment by the court. It is not the responsibility of this court to formulate or speculate as to the legal positions of the parties to lawsuits.

It is well-established that 42 U.S.C. § 1983 does not "expressly refer to actions for death or the survival of claims arising from civil rights violations." *Brazier v. Cherry*, 293 F.2d 401, 403 (5th Cir. 1961).[19]  The former Fifth Circuit's opinion in *Brazier* addressed the question of "whether death resulting from violation of the Civil Rights Statutes gives rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both," *id.* at 402, and held that a corollary statute, 42 U.S.C. § 1988, causes courts to look to state law to determine who may properly bring a civil rights action on behalf of a deceased individual, *provided* the forum state's law is not inconsistent with federal law. *Id.* at 407-08.[20]

The Eleventh Circuit discussed the holding and reasoning of *Brazier* in *Carringer v. Rodgers*, 331 F.3d 844 (11th Cir. 2003), saying:

> In *Brazier*, a widow in Georgia sued police officers for beating her husband to death in violation of his constitutional rights. [*see* 293

---

[19]"The Supreme Court has recognized that 'inevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action.'" *Robertson v. Hecksel*, 420 F.3d 1254, 1260 (11th Cir. 2005) (quoting *Moor v. County of Alameda*, 411 U.S. 693, 702 n.14 (1973)).  "This is where 42 U.S.C. § 1988 comes into play." *Id.*

> "[A]s is plain on the face of the statute, [§ 1988] is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights." *Moor*, 411 U.S. at 702, 93 S.Ct. at 1792 (footnote omitted).  If federal law is "not adapted to the object" or is "deficient," federal courts must look to state law to fill the gaps.

*Robertson*, 420 F.3d at 1260.

[20]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

5

F.2d] at 402. The plaintiff widow asserted her federal claims: (1) as the surviving wife individually for the wrongful death of her husband; and (2) as administratrix of the decedent's estate. *Id*. The district court dismissed the plaintiff's § 1983 claims, concluding that the claims for violations of the decedent's constitutional rights terminated upon his death. Reversing, this Court concluded that 42 U.S.C. § 1988 incorporated both Georgia's wrongful death statute and Georgia's survival statute in order to provide full remedies for the violations of the decedent's constitutional rights under § 1983. *Id*. at 409.

The *Brazier* Court first considered the issue of recovery under § 1983 when death occurs, and framed the issue as: "whether death resulting from violation of the Civil Rights Statutes gives rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both." *Id*. at 402. Recognizing that the civil rights statutes "d[id] not expressly refer to actions for death or the survival of claims arising from civil rights violations," this Court determined, in contravention of the common law rule, that the decedent's constitutional claims did not terminate upon his death. *Id*. at 403-04. The *Brazier* Court further concluded that, unless the decedent's cause of action survived his death, the remedies provided by § 1983 would fail when the injury is death. The *Brazier* Court reasoned that "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death." *Id*. at 404.

After concluding that the decedent's claims did not terminate upon his death, the *Brazier* Court determined that there remained a "gap" between "the civil rights legislation . . . and the tolerant, hospitable construction to ameliorate the hardships of the common law rule." *Id*. at 407. To fill the gap left by federal law, the *Brazier* Court concluded that 42 U.S.C. § 1988 required courts to look to state law. *Id*. The *Brazier* Court then found that the statutory machinery in Georgia law gave effective redress of constitutional claims after death under § 1983. *Id*. at 409. In addition to deciding that state law should be used, the *Brazier* Court explained how the law of Georgia filled the gap left by federal law in § 1983 claims where death resulted from constitutional

violations. *See id.* at 409.

*Carringer*, 331 F.3d at 848-849. "In stating that the suit could be brought in Georgia by both the individual entitled to bring a wrongful death action and the decedent's administratrix, the *Brazier* 'court held that both Georgia's wrongful death and survival statutes were incorporated into federal law under § 1988.'" *Id.* at 849 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 390 (5th Cir. 1992)). Thus, the Eleventh Circuit's decision in *Carringer* makes it clear that *Brazier* remains binding precedent in the Eleventh Circuit.[21]

---

[21]The *Carringer* Court noted that:

The right to wrongful death recovery under § 1983 has generated considerable debate amongst our sister circuits. In fact, there are at least four different theories used by circuit courts to determine what claims after death may proceed under § 1983. *See* 1C Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation Claims and Defenses* §§ 13.3-13.7 (3d ed. 1997 & Supp. 2002) (discussing the two main theories and collecting cases). For example, *Brazier* states that § 1988 permits courts to "borrow" state wrongful death statutes to the extent they are consistent with § 1983. *Brazier,* 293 F.2d at 409. Some circuits follow a constitutional approach; that is, to allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the homicide of the decedent destroyed that relationship and, therefore, violated the claimant's own protected constitutional rights. *See, e.g., Bell v. City of Milwaukee,* 746 F.2d 1205, 1242-48 (7th Cir. 1984) (parent may assert constitutional claim for death of adult child, but siblings cannot sue under wrongful death theory); *Trujillo v. Bd. of County Comm.,* 768 F.2d 1186, 1189 (10th Cir. 1985) (recognizing constitutional claims by parents and siblings, but only when defendant intended to destroy constitutionally protected relationship). Other circuits have concluded that a parent does not have a liberty interest in the companionship of an adult child. *See, e.g., Butera v. District of Columbia,* 235 F.3d 637, 656 (D.C. Cir. 2001). Still, some circuits permit recovery of the damages for the harm done to the decedent, but not for the harm to the survivor, even though both are permitted under state law. *See, e.g., Andrews v. Neer,* 253 F.3d 1052, 1063-64 (8th Cir. 2001) (*en banc*). However, until the Supreme Court elects to decide the issue or this Court, sitting *en banc,* overrules *Brazier,* we are bound by *Brazier*'s decision that under § 1988 Georgia's wrongful death statute is incorporated into § 1983. *Cargill*

With respect to the applicability of Alabama's wrongful death statute to § 1983 actions, and in keeping with *Brazier* and its progeny, the Eleventh Circuit noted in *Hess v. Eddy*, 689 F.2d 977 (11th Cir. 1982), that:

> In actions brought pursuant to 42 U.S.C. § 1983, federal courts may indeed apply rules of state law to questions as to which Congress has not provided clear guidance. Congress did not provide a statute of limitations for section 1983. Therefore, the district court correctly applied Alabama law to determine the applicable limitations period and properly held that the two-year limit set forth in Alabama's wrongful death statute would control in this case. Similarly, Congress did not provide rules of survivorship for section 1983 actions. Therefore, *the district court acted properly in applying Alabama law to determine that the decedent's right of action survived his death and that the only party who could properly assert this claim would be the administratrix of his estate*.

*Id.* at 980 (emphasis supplied); *see also Brown v. Morgan County, Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981) (holding "that federal law is deficient with respect to survival, that the Alabama wrongful death act may be adopted by reference through § 1988, that the policies of the federal civil rights statutes and the Alabama wrongful death act are not inconsistent, and that the Alabama act should be adopted in toto");

---

*v. Turpin,* 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision."). Although the Supreme Court has addressed § 1983 actions after death in two potentially relevant cases, *see Moor v. County of Alameda,* 411 U.S. 693, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973) and *Robertson v. Wegmann,* 436 U.S. 584, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978), it has not reached the issue raised and decided in *Brazier.* In fact, the Supreme Court cited to *Brazier* as an example of the type of issue it *was not* addressing. *See Robertson,* 436 U.S. at 594, 98 S. Ct. 1991.

*Carringer*, 331 F.3d at 850 n.9. *See also supra* note 20.

*Pollard v. United States*, 384 F. Supp. 304, 306 (M.D. Ala. 1974) (following *Brazier*, implicitly incorporating Alabama's wrongful death statute into federal law, and dismissing, pursuant to Alabama law, certain plaintiffs' § 1983 claims brought by the estates of those who died as a result of the infamous Tuskegee Syphilis Study); *Carter v. City of Birmingham*, 444 So.2d 373, 376 (Ala. 1983) (noting the holding of *Brazier*, and stating that "we agree with and adopt the reasoning and holding of the District Court in *Brown* [*v. Morgan County, Ala.*, *supra*]").

Upon consideration of the foregoing authorities, this court holds that Alabama's wrongful death statute provides the remedial vehicle for the duly-appointed personal representative of a deceased person's estate to seek redress, through 42 U.S.C. § 1983, for violations of the decedent's civil rights that allegedly resulted in the decedent's death. Alabama's wrongful death statute provides that:

> (a)   A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.
>
> (b)   Such action shall not abate by the death of the defendant, but may be revived against his personal representative and may be maintained though there has not been prosecution, conviction or acquittal of the defendant for the wrongful act, omission, or negligence.

>    (c)   The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.
>
>    (d)   Such action must be commenced within two years from and after the death of the testator or intestate.

Ala. Code § 6-5-410 (1975) (2005 Replacement Vol.).

"The words 'personal representative' are broader in some respects, but when used in [Alabama's wrongful death] statute, they can only mean the executor or administrator of the injured testator or intestate." *Brown v. Mounger*, 541 So. 2d 463, 464 (Ala. 1989) (quoting *Hatas v. Partin*, 278 Ala. 65, 175 So. 2d 759 (Ala. 1965)). Furthermore, the Alabama statute

> requires that the action must be brought within two years after the death of the testator or intestate.  This two year period is part of the substantive cause of action and is not to be treated as a statute of limitations.  The two year period is not a limitation against the remedy only because after two years the remedy expires.

*Id.* (citing *Nicholson v. Lockwood Greene Engineers, Inc.*, 278 Ala. 497, 179 So. 2d 76 (Ala. 1965); *Louisville and N.R.R. Co. v. Chamblee*, 171 Ala. 188, 54 So. 681 (Ala. 1911)).

The general rule in Alabama is that "the acts of a nonappointed personal representative are *void*, and if the two years has expired, an amendment pursuant to Rule 17(a), [Alabama Rules of Civil Procedure],[22] will not 'relate back,' there being

---

[22] Federal Rule of Civil Procedure 17 "is identical to the language of [Alabama Rule of Civil Procedure] Rule 17." *Holyfield*, 565 So. 2d at 189.

no valid act to which the amendment can relate back." *Holyfield v. Moates*, 565 So. 2d 186, 187-188 (Ala. 1990) (emphasis supplied); *see also Downtown Nursing Home, Inc. v. Pool*, 375 So. 2d 465, 466 (Ala. 1979) (holding that a suit brought under Alabama's wrongful death statute by one other than the personal representative of the deceased is a "nullity"); *Waters v. Hipp*, 600 So. 2d 981, 982 (Ala. 1992) ("One who sues under [Alabama's wrongful death statute] without having been appointed executor or administrator does not qualify . . . as a personal representative, and the suit is a nullity.").

Stated differently, one who is not the personal representative of a deceased individual's estate does not have standing to pursue a wrongful death claim under Alabama's wrongful death statute. *See Hess*, 689 F.2d at 980.

That said, there is a caveat to this general rule that is to be applied in the federal courts whereby the personal representative of an estate must be substituted as the real party in interest in a § 1983 wrongful death suit, pursuant to Federal Rule of Civil Procedure 17, even if the lawsuit was commenced by someone other than the estate's personal representative, and the two year limitation has run. *See id.* at 980-81 (holding that "we find that the trial court erred in applying Alabama's 'no relation back' rule in the face of [Federal Rule of Civil Procedure 17]"); *see also Holyfield*, 565 So. 2d at 189-90 (noting the *Hess* decision, and holding that a trial court

committed reversible error in not allowing an amendment to a wrongful death lawsuit to substitute, as the proper party plaintiff, the administratrix of the estate where the suit was originally commenced by one other than the personal representative, and despite the fact that the two year limitations period prescribed in Alabama's wrongful death statute had expired at the time the administratrix sought to amend the complaint). Such is the case here.

As previously discussed, Jeffrey D. Ashley died on May 18, 2006. His sister, Margaret Ashley, was appointed, in Lincoln County, Tennessee, as the administrator of her deceased brother's estate on November 16, 2006, which is well within the two year limitation period provided in Alabama's wrongful death statute.[23] Nearly two years after decedent's death, on May 7, 2008, the present lawsuit was commenced by the decedent's brother, Jerry Ashley, and his father, David Ashley, neither of whom is (or ever was) the personal representative of decedent's estate. As such, their actions are "void," and this action, as prosecuted by them, is a "nullity" as a matter of Alabama law. *Waters*, 600 So. 2d at 982. Had Margaret Ashley, the personal representative of the estate at issue, not sought to be substituted as the real party in interest in this case, this action would certainly be due to be dismissed. However, the motion seeking leave to file a first amended complaint, filed more than two years after the decedent's death, seeks only to amend the original complaint to add Margaret

---

[23]*See* doc. no. 19 (defendants' response to motion to file first amended complaint) at ¶ 8.

Ashley as a plaintiff to this lawsuit, and it is due to be granted in that regard. *See Hess*, 689 F.2d at 980-81.

Because the original complaint, as well as the proposed "first" and "second" amended complaints are "shotgun" pleadings, the motions to file amended complaints are otherwise due to be denied, and the proposed amended complaints are not a part of the record of this case.

**B.     The Original Complaint is a "Shotgun" Pleading**

The original complaint, the only complaint of record in this case, is deficient and must be re-pled. Defendants Dorning and Thrower argue in their "Motion for a More Definite Statement" that the original complaint is incomprehensible to such a degree that they cannot respond rationally to its allegations. The court agrees.

The original complaint does not meet the liberal requirement of notice pleading under Federal Rule of Civil Procedure 8(a), which mandates that a pleading stating a claim for relief must contain all of the following:

>      (1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; [*and*]
>
>      (2)    a short and plain statement of the claim showing that the pleader is entitled to relief; *and*
>
>      (3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (alteration and emphasis supplied). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

Furthermore, because of its "shotgun" nature, the original complaint falls short of the Rule 8 standard.

> The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.

*Goodison v. Washington Mut. Bank*, 232 Fed. Appx. 922, 923 (11th Cir. 2007) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). *See also*, *e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (noting that a "shotgun" complaint "is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure").

When confronted with a "shotgun" complaint, it is important for a court to

"narrow and define the issues from the earliest stages of the litigation." *Ebrahimi v. City of Huntsville Board of Education*, 114 F.3d 162, 165 (11th Cir. 1997). "Absent such efforts, shotgun notice pleadings . . . would impede the orderly, efficient, and economic disposition of disputes." *Id*.

An insurmountable failing of the original complaint, as well as the two proposed amendments, is that the identity of the plaintiff or plaintiffs is not clear from the pleadings. It is impossible to discern whether this action is being brought by Jerry and David Ashley as individuals, or by them on behalf of the decedent's estate, or by Margaret Ashley as the administratrix of the estate, or by all (or some) of these persons individually as well as on behalf of the estate. In short, the identity of the plaintiff or plaintiffs is not pled with sufficient detail. However, pursuant to Alabama's wrongful death statute, the *only proper plaintiff* to this lawsuit is Margaret Ashley, acting in her representative capacity, as the court-appointed personal administrator of the Estate of Jeffrey D. Ashley, deceased. *See* Ala. Code § 6-5-410 (1975) (2005 Replacement Vol.).

In addition, the factual allegations and legal claims are jumbled and unintelligible, and each legal claim is not set forth in a separate count as is required by Federal Rule of Civil Procedure 10(b). The original complaint asserts multiple claims against some or all defendants; however, the court cannot readily decipher

15

which claims are being levied against which defendants, or all of them simultaneously, or on which specific facts those claims are based. Moreover, the original complaint goes too far, in that it sets forth every possible legal theory or claim "allowable under federal or state law, or both" without committing to a foundation for these claims or identifying any particular federal or state law claim.[24] Under Federal Rule of Civil Procedure 8(a), it is a plaintiff's responsibility to assert his or her theory of relief, and this court will not sift through the body of state and federal law in an effort to determine what claims were intended to be set out in this lawsuit, but were not specifically stated.

The only claim pled with any degree of specificity is a state law claim for negligent training against defendants Downing and Howell. Nevertheless, this claim still misses the mark as to both minimum notice pleading under Federal Rule of Civil Procedure 8(a), and the requirements of Federal Rule of Civil Procedure 10(b).

Furthermore, the original complaint purports to assert § 1983 claims against government officers in their individual capacities. When a plaintiff asserts individual capacity claims against government officials, there is a heightened pleading standard applicable to those claims. *See, e.g., GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity

---

[24]Doc. no. 1 (original complaint) at 10.

grounds, we are guided by . . . the heightened pleading requirement."); *Gonzales v. Reno*, 325 F.3d 1228, (11th Cir. 2003) (holding that in civil rights cases in which the defense of qualified immunity plays a role, the complaint must "allege the relevant facts with some specificity," and that "[m]ore than mere conclusory notice pleading is required") (internal citations and marks omitted). The original complaint falls woefully short of this benchmark. It fails to place either the defendants or this court on notice of which of decedent's federal rights defendants have allegedly violated. Merely stating generally that a person's "rights" have been violated by government officials, without providing any additional specificity, is not sufficient.

Finally, the original complaint names various fictitious defendants. Federal courts do not allow fictitious party practice. *See New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court."). Therefore, any claims asserted against fictitious defendants are due to be, and hereby are DISMISSED. *See*, *e.g.*, *Wiggins v. Risk Enterprise Management Ltd.*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998) (dismissing *sua sponte* fictitious defendants).

### III.  CONCLUSION AND ORDERS

To summarize, the motion to file an amended complaint is GRANTED in part, but only to the extent that Margaret Ashley, in her representative capacity as the duly-

appointed personal representative of the Estate of Jeffrey D. Ashley, deceased, is substituted as the real party in interest in lieu of the original plaintiffs, Jerry Ashley and David Ashley. Further, the clerk and counsel for the proper plaintiff, Margaret Ashley, are directed to strike the names of Jerry and David Ashley from all future pleadings. The motions to file either the "first" or "second" proposed amended complaints are otherwise DENIED.

The "Motion to Dismiss, Motion to Strike, Motion for a More Definite Statement, or, in the alternative, Motion for Partial Summary Judgment" filed by defendants Blake Dorning and Casey Thrower is GRANTED in part as to the "Motion for a More Definite Statement," and is otherwise DENIED. The motions to dismiss by defendants Howell and Bauman are DENIED without prejudice to those defendants' right to re-file, if appropriate, after a "third" amended complaint is submitted to the court.

In light of the foregoing discussion, Margaret Ashley, in her representative capacity as the duly-appointed personal representative of the Estate of Jeffrey D. Ashley, deceased, is hereby ORDERED to file, by **September 11, 2008**, a "third" amended complaint which conforms to the Federal Rules of Civil Procedure discussed above. If an amended complaint is not timely filed, or if the "third" amended complaint fails to cure the "shotgun" defects of the original complaint, this

action will be dismissed.

 DONE this 4th day of September, 2008.

             _____
             United States District Judge